496 A.2d 56

**Linda Claire LACZKOWSKI**

v.

**Edward Thomas LACZKOWSKI, Appellant.**

Superior Court of Pennsylvania.

Submitted July 19, 1984.

June 7, 1985.

Reargument Denied Aug. 20, 1985.

156

Joseph P. Giovannini, Jr., Wilkes-Barre, for appellant.
Charles A. Shaffer, Wilkes-Barre, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This case presents the novel, yet important, issue of whether section 401 of the Divorce Code [1] empowers our courts to enter an Order giving a wife (and child) the right to reside in the marital residence until equitable distribution is made, and further ordering the husband to vacate said premises. Since this is an issue of first impression in this Commonwealth, we have reviewed the law of two leading jurisdictions which have addressed this question and conclude that the Order of the lower court should be affirmed.

The appellee, Linda Claire Laczkowski, and the appellant, Edward Thomas Laczkowski, although currently separated, are husband and wife and were married on June 17, 1967. The parties have one child born of this marriage, a daughter, Melissa, age 7. The parties and their minor daughter resided together in the marital residence located at 123 Oak Street, Wilkes-Barre, Luzerne County, Pennsylvania, until May 3, 1982, when the appellee, together with Melissa, left the marital residence and went to reside at the appellee's

1. Act of April 2, 1980, P.L. 63, No. 26, §§ 101–801; 23 P.S. §§ 101–801 (Supp.1984).

parents' home at 42 Dagobert Street, Wilkes-Barre. Appellee and Melissa resided there until May 16, 1983.

The marital residence is jointly owned by the parties, in the form of tenancy by the entirety, and is the only real estate owned by them and the single major asset of their marital estate. On June 24, 1982, the appellee filed a complaint in divorce against the appellant alleging the no-fault grounds of an irretrievably broken marriage as well as the fault grounds of indignities. The complaint further requested that the ancillary matters of permanent alimony, division of property, attorneys fees, temporary alimony, child support and court costs be determined in the divorce proceedings.

On September 15, 1982, an inventory and appraisement was filed by the appellee pursuant to the Rules of Civil Procedure. On November 19, 1982, the appellee filed a petition for special relief, requesting that she be placed in possession of the marital residence to the exclusion of the appellant on the basis that she had been subjected to harrassment and mental cruelty by the appellant and, in support thereof, cited section 401(h) of the Divorce Code and Pa.R.C.P. 1920.43(a). Along with the petition for special relief, the appellee filed a rule to show cause why the possession of the marital residence should not be granted to the appellee. Said petition and rule were duly served upon the appellant, who filed an answer to the petition on November 29, 1982. After a hearing on December 29, 1982, the lower court issued an Order directing the appellant to leave the marital residence and granting exclusive possession to the appellee. No exceptions were taken to this Order nor was an appeal perfected.

On January 27, 1983, appellant's former counsel withdrew his appearance and present counsel entered his appearance on appellant's behalf. On February 7, 1983, the appellant, by and through his new counsel, filed a motion and rule to show cause why the Order of December 29, 1982 should not be vacated for lack of jurisdiction.

On February 22, 1983, a rule to show cause and petition for citation for contempt was filed on behalf of the appellee due to the appellant's failure to relinquish possession of the marital residence. The rule returnable was set for March 7, 1983, the same day on which the appellant's rule was returnable on his motion to vacate the Order for lack of jurisdiction.

On March 11, 1983, the lower court, after a hearing, denied the appellant's motion to vacate the December 29th Order. The Order of March 11, 1983 was entered of record on March 16, 1983, whereupon the appellant immediately filed an appeal to this Court. The Order of March 11, 1983, reads as follows:

'AND NOW, this 11th day of MARCH, 1983, at 10:45 o'clock, A.M., upon consideration of the Defendant's Motion, and after Hearing, this Court finds that the issues raised by the Defendant in his Motion to Vacate, could have been raised by the Defendant at the time that the hearing was held on the Plaintiff's Petition for Special Relief, and that they were not raised at that time, and not having raised them previously, the Defendant is barred from raising them now.

FURTHER, even if this Court were to consider the issues now raised by the Defendant, the Court is of the opinion that the Order entered December 29, 1982, was proper under all of the circumstances; and it is hereby

ORDERED that the Defendant's Motion to Vacate said Order is DENIED.

BY THE COURT,
/s/ Brominski,
J.'

On March 10, 1983, appellant filed a petition for stay and supersedeas of the December 29, 1982 Order, pending the instant appeal. Said petition was denied and on March 11, 1983, after a hearing, the lower court found the appellant in contempt of the December 29, 1982 Order awarding appellee the right to live in the family home to the appellee. On May 12, 1983, after a hearing, the lower court entered a

further Order which directed the appellant to purge himself of his contempt of the December 29, 1982 Order by 9:00 a.m. on May 16, 1983. Additionally, the Order stated that upon failure of the appellant to purge himself of his contempt, as provided above, the Sheriff of Luzerne County, upon request by the appellee and without further hearing, would be directed to apprehend and incarcerate the appellant in the Luzerne County Prison, until such time as the appellant assured the court that he had purged himself of his contempt.

Appellant argues (1) that the lower court lacked jurisdiction under section 401 of the Divorce Code and Pa.R.C.P. 1920.43(a) to dispossess the appellant from the marital residence and grant exclusive possession to the appellee; and (2) that because the lower court lacked jurisdiction and authority to issue such an order, the appellant cannot be held in contempt of court for noncompliance with an invalid order.

At the outset, we note that appellant has phrased the above issues in the context of a jurisdictional attack when, in fact, no such question exists. This appeal stemmed from a divorce action which the lower court clearly had jurisdiction to hear. The question concerning whether the court could dispossess the appellant from the marital residence and grant exclusive possession to the appellee during the pendency of the divorce proceedings is *not* a jurisdictional matter; rather, it involves the judicial interpretation of section 401 of our Divorce Code. Rephrased, the issue before us is whether the lower court correctly applied section 401 of the Divorce Code. Consequently, we are not concerned with subject matter jurisdiction, which is limited to the question of whether a court has the power to determine controversies of the general class to which the case belongs. *See Nagle v. American Casualty Co.*, 317 Pa.Super. 164, 463 A.2d 1136 (1983). Our review of the record leads us to conclude that appellant, through his new counsel, phrased the above issues in this context because an attack on the court's subject matter jurisdiction can be

raised at any time and cannot be waived. *Encelewski v. Associated-East Mortgage Co.,* 262 Pa.Super. 205, 396 A.2d 717 (1978). Obviously, this was done in direct response to prior counsel's failure either to take exceptions to the December 29, 1982 Order or to perfect an appeal from that Order. While there is no Pennsylvania case on point regarding a temporary award of the possession of the marital residence, this Court has previously held that the failure to file exceptions to an award of alimony *pendente lite* or interim counsel fees constitutes a waiver. *See, e.g., Sutliff v. Sutliff,* 326 Pa.Super. 496, 474 A.2d 599 (1984); *Carangelo v. Carangelo,* 321 Pa.Super. 219, 467 A.2d 1333 (1983); *Commonwealth ex rel. Dewalt v. Dewalt,* 309 Pa.Super. 275, 455 A.2d 156 (1983). *See also* Pa.R.C.P. 1038, 1920.-1(b), 1920.52 and 1920.55.

However, we believe that a finding of waiver would be unfair in the context of the present case as this area of the law was unsettled during the time period wherein appellant's counsel failed to file exceptions. While *Dewalt* held that the failure to file exceptions to an Order awarding alimony *pendente lite* constitutes a waiver, we emphasize that it was not filed until January 21, 1983, more than three weeks after the December 29, 1982 Order. Thus, when the final order awarding the temporary use and possession of the marital home was entered on December 29, 1982, there had been no judicial pronouncement which specifically required the filing of exceptions to an award of alimony *pendente lite* or interim counsel fees (let alone an award involving the temporary use and possession of the marital home).[2] Due to the uncertainty in the existing law at that time, we conclude that there are sufficient reasons for finding no waiver here. *See Commonwealth ex rel. Nixon v. Nixon,* 321 Pa.Super. 313, 458 A.2d 976 (1983) (no waiver

---

**2.** The Order from which this appeal was brought is final since: "(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Sutliff v. Sutliff, supra,* 326 Pa.Superior Ct. at 499, 474 A.2d at 600, quoting *Pugar v. Greco,* 483 Pa. 68, 73, 394 A.2d 542, 544–45 (1978).

since at time final support order was entered there existed no judicial pronouncement specifically requiring the filing of exceptions); *Jones v. State Automobile Insurance Association*, 309 Pa.Super. 477, 455 A.2d 710 (1983) (failure to file exceptions did not constitute waiver due to the considerable confusion in the existing law). *See also Pomerantz v. Goldstein*, 479 Pa. 175, 387 A.2d 1280 (1978); *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 199 A.2d 540 (1964); *Werts v. Luzerne Borough Authority*, 15 Pa. Commw.Ct. 631, 329 A.2d 335 (1974); Pa.R.C.P. 126; Pa.R. A.P. 105.

■ Moreover, on January 27, 1983, appellant's former counsel withdrew his appearance and present counsel entered his appearance on appellant's behalf. While appellant seems to have a propensity for experiencing difficulty with his attorneys,[3] we are concerned that this incompatibility could have motivated prior counsel's failure to either take exceptions to or appeal the December 29, 1982 Order. Finally, as we previously stated, this is an issue of first impression which involves the welfare of a child; we believe that the necessity of addressing the merits of this appeal is evident.[4] We find no waiver in the instant case because of the above reasons. However, we wish to point out that in future cases, counsel must follow the dictates of *Sutliff, Carangelo* and *Dewalt, supra,* which require the filing of exceptions to preserve issues on appeal.

**3.** The record discloses that appellant's second counsel also withdrew from representing him due to their incompatability and appellant's failure to pay legal fees.

**4.** The dissent would quash the instant appeal since appellant failed to file a timely notice of appeal from the December 29, 1982 Order. *See* Pa.R.A.P. 105(b); *Hesson v. Weinrebe,* 288 Pa.Super. 216, 431 A.2d 1015 (1981) (appellate courts are without authority to enlarge time period for filing notice of appeal). However, since no exceptions were taken to the December 29, 1982 Order, it was *not* immediately appealable. In light of the ambiguity surrounding the appealability of the instant Order, (see page 59 text), we feel compelled to reach the merits of this appeal notwithstanding its unusual procedural posture. We conclude that this result is in the interests of judicial economy since the issues have been briefed by both parties and argued before this Court. Pa.R.A.P. 105(a).

■ Turning now to the issue of whether the lower court properly awarded the marital residence to the wife, we point out the broad equitable powers conferred upon courts pursuant to section 401(c) of the Divorce Code, which provides:

> c. In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

Moreover, section 401(h) specifically states:

> h. The court may award to one, each, or both of the parties the right to live in the family home for reasonable periods of time.

Viewing these two sections together, we hold that the lower court had the authority to temporarily award the marital residence, pending equitable distribution of marital property, to a spouse having physical custody of a minor child. Our conclusion is supported by section 102 of the Divorce Code which states in pertinent part:

### § 102. Legislative findings and intent

(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

(1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.

(2) Encourage and effect reconciliation and settlement of differences between spouses, especially where children are involved.

(3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs.

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.

(5) Seek causes rather than symptoms of family disintegration and cooperate with and utilize the resources available to deal with family problems....

Our conclusion is supported by the case law of two states whose divorce statutes are substantially similar to our Divorce Code. In the recent New Jersey case of *Degenaars v. Degenaars*, 186 N.J.Super. 233, 452 A.2d 222 (1982), the New Jersey Superior Court held that a spouse may be excluded from the marital residence solely because that spouse had been living apart from the residence for a period of time. The *Degenaars* court noted that it had the power to grant the relief sought by the wife through its inherent equitable jurisdiction. In *Degenaars*, the husband voluntarily removed himself from the marital home and for 17 months, the wife and children planned and lived their lives in the absence of the husband as an overnight resident. The *Degenaars* court emphasized that it was faced with a *pendente lite* situation, and thus, the mental and emotional health and welfare of the wife and children should not "be compromised by the ever-present knowledge that defendant can move in, out and about the marital home with impunity[.]" *Degenaars, supra,* 186 N.J.Super. at 235, 452 A.2d at 223. Citing its *parens patriae* jurisdiction as protecting the interests of children, especially in matrimonial litigation, the *Degenaars* court noted that the legislature has vested the trial courts with broad equitable powers during the pendency of matrimonial actions, to make such orders "as to the care ... and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just ..." N.J.S.A. 2A:34-23. *See Davis v. Davis,* 184 N.J.Super. 430, 446 A.2d 540 (1982).

The *Degenaars* court found that:

...[i]t would be inimical to the best interests and welfare of the plaintiff and the children to permit their lives, both emotionally and physically, to be traumatically invaded by

defendant's unilateral decision to resume residency in the marital home. The interests and welfare of the plaintiff and children will be best served by maintaining the *status quo ante* as initiated by the defendant himself.

*Degenaars, supra* at 235, 452 A.2d at 223.

Another instructive case is *Pitsenberger v. Pitsenberger,* 287 Md. 20, 410 A.2d 1052, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *reh'g denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980), where the court ruled against the husband's due process challenge to an award of temporary exclusive possession of the marital home to one spouse without requiring said spouse to show that grounds exist for a divorce. The *Pitsenberger* court noted that the trial court had referred the *pendente lite* issues to a master, who recommended that the wife, who was given *pendente lite* custody of the parties' five children, also be given *pendente lite* possession of the family home so that the children could continue to attend their former school without being forced to travel a greater distance. The authority upon which the *Pitsenberger* court issued the use and possession award of the family home to the wife is section 3–6A–06 of the Courts and Judicial Proceedings Article from the Annotated Code of Maryland which, in relevant part, provides:

(a) The authority conferred by this section shall be exercised to permit the children of the family to continue to live in the environment and community which is familiar to them and to permit the continued occupancy of the family home and possession and use of family use personal property by a spouse with custody of a minor child who has a need to live in that home.... In exercising its authority under this section, the court shall consider each of the following factors:

(1) The best interests of any minor child;

(2) The respective interest of each spouse in continuing to use the family use personal property or occupy or use the family home or any portion of it as a dwelling place;

(3) The respective interest of each spouse in continuing to use the family use personal property or occupy or use the family home or any part of it for the production of income;

(4) Any hardship imposed upon the spouse whose interest in the family home or family use personal property is infringed upon by an order issue under this section....

In *Pitsenberger, supra,* 287 Md. at 31, 410 A.2d at 1058, the Maryland Court of Appeals lucidly stated that the legislative purpose and intent of section 3–6A–06 in the context of a *pendente lite* use and possession award is to give "special attention to the needs of minor children to continue to live in a familiar environment" and "to avoid uprooting the children from the home, school, social and community setting upon which they are dependent." *Id. See also, Kennedy v. Kennedy,* 55 Md.App. 299, 462 A.2d 1208 (1983); *Strawhorn v. Strawhorn,* 49 Md.App. 649, 435 A.2d 466 (1981), *vacated on other grounds,* 294 Md. 322, 450 A.2d 490 (1982).

We adopt the rationale of *Degenaars* and *Pitsenberger,* and hold that the lower court acted properly in awarding temporary use and possession of the marital home to the appellee.

Appellant's claim that Pa.R.C.P. 1920.43(a), which is a procedural arm of section 403(a) of the Divorce Code, precludes the award of the marital home in the instant case since the appellee did not allege that the property would be sold, removed, alienated or encumbered in any way, has no bearing on the issues before us. Appellant's claim is belied by the manifest language of section 102(a), which, as we have already indicated, is concerned with preserving the family unit and protecting the welfare of children in marital disputes. Appellant's attempt to override such a humane policy by arguing that our Divorce Code can only grant relief when there is harm to the *property* involved is contrary to the dictates of our Divorce Code, as well as being offensive to the societal needs of children caught in the crossfire of domestic disputes. While common law

jurisdictions have traditionally treated property rights as both unique and omnifarious, we believe that in the instant case such rights must yield to the common law doctrine of *parens patriae*, the goal of which is to provide the child with a permanent home. Since the cases relied on by the appellant involve different situations, such as the award of the marital home as a form of child support or permanent alimony after a divorce and pursuant to equitable distribution, we need not consider them as they are totally inapposite.

■ Furthermore, appellant's contention that the Protection From Abuse Act, 35 P.S. § 10181 *et seq.*, preempts any alternative procedure by which one spouse may dispossess another spouse from the marital residence is untenable. Where a conflict exists between two statutes, the Superior Court must construe the two, if possible, so that both may be given effect. *Young v. Young*, 320 Pa.Super. 269, 467 A.2d 33 (1983), *rev'd on other grounds*, 507 Pa. 40, 488 A.2d 264 (1985). A protection from abuse proceeding is quasi-criminal in nature and seeks to protect the abused spouse and children from physical violence, whereas the relief awarded in the instant case is equitable in nature and is concerned with stabilizing the family unit. As such, this statute must be construed in *pari materia* with the Divorce Code, since they were enacted for different but not incompatible purposes. Since recourse was not had to a proceeding under the Protection From Abuse Act, we find that it has no bearing on our decision.

The equitable powers of the courts under our Divorce Code are extremely broad, and since the Code unequivocally recognizes the right of one spouse to live in the family residence after divorce, there is no discernible reason for precluding such an award in a *pendente lite* situation. While our decision may appear to have wide reaching ramifications, we are mindful that the exclusion of a spouse from the marital home during the pendency of a divorce proceeding is a harsh remedy that will not be awarded

cavalierly. The need for such an award must be clearly evident in the facts of each case.

Our review of the record leads us to conclude the lower court acted properly in ruling that the appellee, Linda Claire Laczkowski, met her burden of proof regarding the petition for special relief wherein she alleged:

1. The Plaintiff and the Defendant are the owners of a family home, which home is known as 123 Oak Street, Wilkes-Barre, Luzerne County, Pennsylvania.

2. The Plaintiff and the Defendant, and their minor daughter, resided together in the family home, prior to May 3, 1982, at which time, the Defendant engaged in such harassment and mental cruelty and intimidation, and threats of violence, as to cause Plaintiff and her minor daughter, to leave the family home.

3. The Defendant, since May 3, 1982, has had possession of the family home, and has excluded the Plaintiff from the family home.

4. The Plaintiff, and her minor daughter, are residing with the Plaintiff's parents, and have been residing with the Plaintiff's parents since May 3, 1982.

5. The present situation is not conducive to a harmonius home life for the Plaintiff and her minor daughter; nor is it fair to the Plaintiff's parents. The situation is progressing to the point where it will no longer be tolerable for the Plaintiff and her minor daughter, and the Plaintiff's parents, to share the home of the Plaintiff's parents.

6. The Plaintiff has tried to rent suitable living accommodations for herself and her minor daughter, but she has been unsuccessful because of her lack of a credit rating, and because of insufficient income.

7. The Defendant earns an excess of Twenty-three Thousand ($23,000.00) Dollars a year; he can easily rent an apartment, or he can live with his father, who lives alone and has adequate room for the Defendant.

WHEREFORE, the Plaintiff prays this Honorable Court to enter an Order, awarding to the Plaintiff, the right to live in the family home until such time as this Court

makes equitable distribution of the marital property of the Parties.

(Appellee's Petition for Special Relief, filed November 19, 1982).

Accordingly, the March 11, 1983 Order denying appellant's motion to vacate the December 29, 1982 Order is affirmed.[5]

BECK, J., dissenting.

BECK, Judge, dissenting:

I respectfully dissent from the majority's holding that appellant has properly appealed to this court. I would quash the instant appeal on the ground that the trial court's order of December 29, 1982,[1] was interlocutory and non-appealable.[2] Moreover, even if the trial court's order had been final and appealable, I would nevertheless quash the present appeal because appellant did not timely appeal the December 29 order.

Where, as in the case sub judice, an order does not terminate the parties' litigation or resolve the parties' entire dispute, the order may be deemed final and appealable only if it bears the following three aspects of finality: " '(1) it is separable from and collateral to the main cause of action;

5. Appellant contends that he cannot be held in contempt of court for noncompliance with a court order since the court lacked jurisdiction and authority to issue said order. However, since we have already concluded that the lower court had adequate jurisdiction pursuant to the Divorce Code to entertain this matter, we need not address this issue as it is totally meritless.

1. The trial court's December 29, 1982, order allowed appellee and the parties' daughter to reside in the marital residence during the pendency of the divorce action.

2. I note that, technically, the instant appeal is from the trial court's order of March 11, 1983, which denied appellant's petition to vacate the court's previous order of December 29, 1982. That is, appellant timely filed a notice of appeal from the trial court's order of March 11 but did not file a notice of appeal from the trial court's order of December 29. However, my analysis of the interlocutory nature of the December 29 order applies equally to the trial court's March 11 order. See further discussion infra of appellant's petition to vacate the December 29 order.

(2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.' " *Sutliff v. Sutliff*, 326 Pa.Super. 496, 499, 474 A.2d 599, 600 (1984) (citation omitted). I conclude that the third aspect of finality is not satisfied by the trial court's December 29 order.

It is necessary to construe the mandate of *Sutliff* strictly. For this court to do otherwise would result in an undue number of piecemeal appeals from a single case. "[I]t would permit the party with greater resources to exhaust the resources of the party with less by taking repeated appeals." *Id.*, 326 Pa.Superior Ct. at 504, 474 A.2d at 603 (Beck, J., dissenting). An appeal of an order stays the entire proceeding. Appeals from interim orders create undue delay in the ultimate resolution of the parties' marital and economic status. "Justice is best served and harm to both parties is minimized by proceeding directly and expeditiously to a final disposition of the entire case at which a complete and fair resolution of all the economic issues may be made." *Id.*, 326 Pa.Superior Ct. at 504, 474 A.2d at 603 (Beck, J., dissenting).

The Divorce Code [3] empowers a court to adjust the parties' ultimate financial settlement (equitable division and distribution of marital property; permanent alimony) to reflect interim relief afforded either party during the pendency of the divorce proceedings. *Sutliff* (Beck, J., dissenting). Accordingly, an award of interim relief such as temporary occupancy of the marital residence, does not irreparably disadvantage the non-receiving party. *Id.* Since appellant's claimed right will not be irretrievably lost if review of the December 29 order is postponed until final disposition of the parties' divorce action, the December 29 order does not meet all three criteria of finality and is an interlocutory, non-appealable order.

However, assuming arguendo that the December 29 order was final and appealable as the majority holds, I would still

---

3. Act of April 2, 1980, P.L. 63, 23 P.S. §§ 101–801.

quash the instant appeal. The majority states, and I agree, that appellant's petition to vacate the December 29 order constituted an effort to circumvent appellant's failure to file either timely exceptions to or a timely notice of appeal from the December 29 order. For the following reasons, I conclude that appellant's failure to file a timely notice of appeal from the December 29 order requires us to quash this appeal.

Citing *Commonwealth ex rel. Nixon v. Nixon*, 321 Pa.Super. 313, 458 A.2d 976 (1983); *Jones v. State Automobile Insurance Association*, 309 Pa.Super. 477, 455 A.2d 710 (1983); *Pomerantz v. Goldstein*, 479 Pa. 175, 387 A.2d 1280 (1978), and *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 199 A.2d 540 (1964), the majority contends that appellant's failure to file exceptions to the December 29 order should not constitute a waiver of issues for appellate review. My reading of *Nixon, Jones, Pomerantz,* and *General Mills, Inc.* persuades me that the case at bar is sufficiently distinguishable to necessitate a different result.

In *Nixon* and *Jones* the respective appellants did not file exceptions to the challenged court orders, but the appellants did file timely notices of appeal from the orders in question. In *Pomerantz* the appellant timely filed a document contesting a court order, but the document was captioned motion for a new trial rather than exceptions. Finally, in *General Mills, Inc.* the appellant duly filed an answer, new matter, and counterclaims containing contradictory averments, but his pleadings were not accompanied by a Pa.R.C.P. No. 1024 verification of inconsistent allegations. The common thread in *Nixon, Jones, Pomerantz,* and *General Mills, Inc.* is that the appellant in each case took timely, affirmative action to assert his viewpoint even though the action in each instance was not in strict accordance with the applicable procedural rules. Most similar to the case sub judice are *Nixon* and *Jones* wherein the appellants neglected to file exceptions to contested court orders. Notably, however, the appellants in *Nixon* and *Jones* did file prompt notices of appeal from the disputed

orders whereas the instant appellant permitted the appeal period to expire before he took any action challenging the December 29 order.

While the "rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter," Pa.R.A.P. 105(a), I would not liberally interpret the rules to justify an appellant's complete inaction. Since appellant wished to treat the December 29 order as a final and appealable order, he should, at the very least, have filed a notice of appeal from same. *See Nixon; Jones.* Nor am I convinced that a different result should obtain because appellant later filed a petition to vacate the December 29 order.[4] Appellant's belated challenge to the December 29 order cannot serve to enlarge the time period for appealing the December 29 order. *See* Pa.R.A.P. 105(b).

Therefore, I would in any event quash the appeal now before us.

---

**4.** Appellant's petition to vacate was filed well after the expiration of the period for appealing the December 29 order.